# STATE OF MICHIGAN

# COURT OF APPEALS

MARTHA DONALDSON,

        Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant,

and

JOHN DOE and CITY OF STERLING HEIGHTS,
d/b/a CITY OF STERLING HEIGHTS POLICE
DEPARTMENT.

        Defendants-Appellees.

UNPUBLISHED
February 12, 2015

No. 318721
Macomb Circuit Court
LC No. 2012-003711-NI

Before: CAVANAGH, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting defendants' motion for summary disposition, dismissing her third-party tort action brought under MCL 500.3135 of the No-Fault Act.[1] We reverse and remand for further proceedings.

Plaintiff allegedly sustained serious injuries in August 2010 when the vehicle she was driving was struck on the front right side by a police vehicle driven by a Sterling Heights police officer. Subsequently, this third-party tort action was filed and, eventually, defendants moved for summary disposition, arguing that plaintiff did not sustain a threshold injury as required under MCL 500.3135. Defendants claimed that plaintiff had been on medical disability for years "due to ongoing neurological, back, leg, shoulder and wrist injuries suffered in her former employment" and there were "no changes to her prior conditions." That is, plaintiff could "point

---

[1] We refer to "John Doe and City of Sterling Heights, d/b/a City of Sterling Heights Police Department" as "defendants" in this opinion.

-1-

to no objective testing evidencing a new injury that did not already exist prior to the accident." The nature and extent of plaintiff's injuries were not disputed; thus, defendants argued, they were entitled to summary disposition as a matter of law because plaintiff did not suffer a serious impairment of body function as defined in MCL 500.3135. However, if the court concluded that a factual dispute existed, plaintiff still could not establish that she sustained a threshold injury.

Plaintiff responded to defendants' motion, arguing that her preexisting low back and depression conditions were significantly aggravated by the motor vehicle collision, and she also suffered new, serious injuries to her neck, hip, thigh, and low back.[2] These conditions were documented in her medical records and included right hip bursitis, traumatic right greater trochanteric bursisitis, right sacroiliac joint dysfunction, cervical radiculopathy, and L4-L5 radiculopathy. Plaintiff argued that her injuries required extensive medical treatment, including several courses of physical therapy, injections in her hip, and injections in her back. Her medication for depression also had to be doubled after the accident and she developed post-traumatic stress syndrome. Because there was a material factual dispute concerning the nature and extent of her injuries, plaintiff argued, the issue whether she suffered a serious impairment of body function was not a question of law for the court and, thus, summary disposition should be denied. In the alternative, plaintiff argued, the evidence of record established that she suffered a threshold injury; therefore, defendants were not entitled to summary disposition of her claim.

By opinion and order dated June 27, 2013, the trial court agreed with defendants and granted their motion pursuant to MCR 2.116(C)(10). In reaching its decision, the trial court considered the physical ailments plaintiff had before the motor vehicle collision and, while acknowledging that the aggravation of a preexisting condition can constitute compensable injury, held that plaintiff's injuries were not compensable. The trial court relied primarily on a May 2011 report from Dr. Brian Roth, who conducted an insurance medical examination of plaintiff and concluded that he did not "see any clinical evidence of ongoing lumbar radiculopathy or compressive neuropathy." The court also quoted from an addendum authored by Dr. Roth in August 2011, which indicated that he had reviewed additional medical records and his opinion was unchanged. Noting that "the evidence is devoid of objective findings for plaintiff's pain," the trial court held: "Based on the medical findings, the Court concludes that there is no objective manifestation of an injury other than a subjective complaint of pain." Because an allegation of general pain and suffering was insufficient to meet the threshold requirement of serious impairment of body function, plaintiff's case was dismissed. This appeal followed.

Plaintiff argues that her evidence demonstrated she suffered an objectively manifested impairment under MCL 500.3135; thus, the trial court's order of dismissal must be reversed. We agree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). "We review a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence

---

[2] Plaintiff argued that she had returned to her normal daily activities about a year before this motor vehicle collision.

submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). A motion based on MCR 2.116(C)(10) is appropriately granted "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Greene v AP Prod, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006) (citation omitted). A genuine issue of material fact exists when the record evidence, viewed in a light most favorable to the opposing party, leaves open an issue upon which reasonable minds could differ. *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013).

Pursuant to MCL 500.3135(1), noneconomic damages may be recovered for a serious impairment of body function. As our Supreme Court explained in *McCormick v Carrier*, 487 Mich 180; 795 NW2d 517 (2010), to establish a serious impairment of body function a plaintiff must show:

> (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living). [*Id*. at 215.]

The issue whether a serious impairment of body function has been sustained is a question of law for the court only when there is no factual dispute regarding the nature and extent of injuries or, when there is a dispute, the dispute is not material to that determination. *Id*. at 192-193, quoting MCL 500.3135(2)(a).

In this case, the trial court held there was "no material factual dispute for the determination of whether the threshold standards are met" and that plaintiff failed to establish she suffered an objectively manifested impairment, i.e., "the first prong of the serious impairment threshold" was not met. We disagree.

With regard to the nature and extent of plaintiff's injuries, defendants argued in their motion for summary disposition that plaintiff had been on medical disability for years "due to ongoing neurological, back, leg, shoulder and wrist injuries suffered in her former employment" and there were "no changes to her prior conditions." But plaintiff presented evidence that she actually suffered neck, right hip and right thigh injuries, as well as post-traumatic stress syndrome, which she did not have before this motor vehicle collision. She also claimed to have suffered a significant aggravation of her previously resolved low back issues and previously well-controlled depression. Thus, contrary to the trial court's conclusion, there is a material factual dispute concerning the nature and extent of the injuries plaintiff allegedly suffered in the motor vehicle collision. See MCL 500.3135(2)(a). This material factual dispute precluded determination of the issue as a question of law whether plaintiff sustained a serious impairment of body function.

But even if there was no material factual dispute regarding the nature and extent of plaintiff's injuries, we would conclude that plaintiff sustained an objectively manifested impairment. An objectively manifested impairment is one that is observable from actual symptoms or conditions. *McCormick*, 487 Mich at 196. Immediately after the motor vehicle

collision, plaintiff complained to ambulance personnel of right arm and right leg pain and weakness. Thereafter, she consistently sought medical treatment for neck, right hip, right thigh, and low back problems, as well as for mental health issues. With regard to her neck, in August 2010, plaintiff was diagnosed with cervical radiculopathy and an MRI in October 2010 revealed a "[s]mall central disc herniation at C6-7." A follow-up CT of her cervical spine in August 2011 revealed loss of the normal cervical lordosis, possibly due to muscle spasm or soft tissue injury. According to plaintiff's medical records, her neck condition caused her pain, spasms, and range of motion limitations, as well as radiating pain and numbness to her right arm and hand. Contrary to defendants' claim and the trial court's conclusion, plaintiff's neck injury was an objectively manifested impairment. And the record evidence did not indicate that plaintiff had cervical radiculopathy and a disc herniation at C6-C7 before this motor vehicle collision.

With regard to her right hip, right thigh, and low back, in October 2010 plaintiff was diagnosed with traumatic right hip bursitis, traumatic right greater trochanteric bursitis, and right sacroiliac joint dysfunction. In May 2011, an EMG revealed "right lateral femoral neuropathy (meralgia paresthetica)." In October 2011, plaintiff's neurologist's impression was "[r]ecurrence of Lumbosacral neuropathy due to MVC of 2010." A subsequent EMG revealed right meralgia paresthetica secondary to seatbelt injury and right L4-L5 radiculopathy secondary to the motor vehicle accident. An MRI of the lumbar spine, also performed in October 2011, revealed "diffuse posterior disc bulging" at the L4-5 level with "moderate impingement upon the neural foramen bilaterally." At the L5-S1 level there was "diffuse posterior disc bulging, accompanied by a very thin broad-based disc herniation in the midline which is slightly more prominent and lobulated in the midline." There was also "mild impingement upon the neural foramen bilaterally" at this level. Subsequently, plaintiff's neurologist treated plaintiff for "Posttraumatic lumbosacral L4-L5 radiculopathy, posttraumatic R meralgia paresthetica, lumbosacral myalgia." According to plaintiff's medical records, these physical conditions required extensive treatment, including several courses of physical therapy, various oral medications, and several injections. These conditions also impaired plaintiff's ability to walk, caused a permanent limp, and necessitated her use of a walker, leg brace, and cane. Thus, contrary to defendants' claim and the trial court's conclusion, plaintiff's hip, thigh, and low back injuries gave rise to an objectively manifested impairment of body function. To the extent that some of plaintiff's low back problems were preexisting, aggravation of a preexisting condition is sufficient to constitute a compensable injury. See *Wilkinson v Lee*, 463 Mich 388, 394-395; 617 NW2d 305 (2000). However, an October 2011 MRI report appears to demonstrate differences in plaintiff's lumbar spine after the collision compared to an August 2009 MRI report. In any case, the record evidence did not show that plaintiff had traumatic right hip bursitis, traumatic right greater trochanteric bursitis, meralgia paresthetica, right L4-L5 radiculopathy, right sacroiliac joint dysfunction, and lumbosacral myalgia immediately before this motor vehicle collision. In summary, the trial court erroneously concluded that plaintiff failed to establish she sustained an objectively manifested impairment of body function.

For the reasons discussed above, the trial court's order granting summary disposition in defendants' favor is reversed.

Reversed and remanded for further proceedings.  We do not retain jurisdiction.  Plaintiff is entitled to costs as the prevailing party.  MCR 7.219(A).

/s/ Mark J. Cavanagh
/s/ Patrick M. Meter
/s/ Douglas B. Shapiro